Green, J.
delivered the opinion of the court.
This is a bill to enjoin a judgment against the complainant, obtained by the defendant for $1259 48.
The facts as disclosed in the bill, answer, and proof, are briefly, as follows: In April 1835, the complainant and one William H. Moore, formed a partnership in the queensware business in Nashville, each partner advancing $10,000 of capital, and each was to give time and attention to the business, and to share equally in the profits and losses. The firm continued in business until January 1838; at that date, the firm was dissolved by consent; Gilliam taking the stock of wares and effects, and assuming the liabilities of the firm, and executed his three notes, one for $4388,89, dated 15th January 1838, and due February 1839; 'another for $4722,22, dated as above and due February 1840; ánd a third for $5055,55, dated as above and due February 1844.
On the 10th February 1842, the balance due on said notes was $4143; at which date the old notes were taken up, and small notes executed for said balance, all of which have been paid, except a note for $1339 48, which has been transferred to the defendant Robert I. Moore, who has obtained a judgment thereon, which this bill seeks to enjoin. It is alledged in the bill, that the contract at the time of the dissolution was usurious; that the terms of the contract were, that W. H., Moore should withdraw his capital of #10,000, and that ten *470 per cent, interest should be added to the several payments from the 5th of Décember 1835, until date, for the forbearance of payment.
The answer denies that there was any usury in the said notes; and states, that it is true the said W. H. Moore was to receive his capital of $10,000, with ten per cent, thereon, from the 5th December 1835, the time it was advanced, until the notes were due, but said ten per cent, was not added in for forbearance of payment, but in lieu of profits and as a means of adjusting the profits of the concern. The answer also insists that as there has been a trial at law, where the complainant put in the defence of usury, and upon a full and fair trial a verdict was found against him, he is barred from any remedy in equity for the same matter.
1. The first inquiry is, whether the trial at law is a bar to the relief sought by this bill. The act of the 26th of January 1846, provides, that when a defendant relies on the plea of usury in an action of law, and his “defence fails for want of proof,” he shall be authorized to file his bill in equity, and the court shall give the requisite relief, “and it shall not be necessary to his obtaining relief in equity, to show that he could not have availed himself of the defence at law.”
It seems to us, that this act was intendéd to open the doors of the courts of chancery, to the investigation of all questions of usury, without regard to any previous proceeding at law. It is insisted, that the expressions in the act, “defence fails for want of proof,” imply an intention on the part of the legislature, that the party shall show, when he comes into equity, that he has other proof than that which' was before the jury in the trial of law, and therefore, his defence failed for want of such proof. This position, we think, is not sustained by the tenor of this law; for it is provided in the concluding part of the section above referred to, “that it shall *471 not be necessary to his obtaining relief in equity to show that he could not have availed himself of the defence at law.”
Now, if he need not show that he could not have availed himself of the defence at law, he may, or he may not make such defences, as he may choose; and no valuable end would be obtained, by restricting a party to his defence at law, unless he can show he has other proof than that he produced before the jury, when he is not required to show he could not have produced it there. Besides, the construction contended for, would be productive of the greatest difficulty and embarrassment, in the investigation of these causes in the chancery court. In every case, the principal question would be, whether all the evidence there produced, was before the jury, in the trial at law. And as the evidence before the jury, rests only in the memory of ‘those who heard the trial, such an investigation would embarrass the cause, be uncertain in its character, and lead to no beneficial result. We think, therefore, that it must be taken, that where the jury found against a defendant on the plea of usury, such verdict is evidence that the “defence failed for want of proof.”
2. We are next to consider whether the proof in this case, establishes the existence of usury. It is insisted for the complainant, that the admitted fact, that ten per cent, per annum was added to the $10,000 of capital, and included in the notes, is conclusive of the usury. Besides, neither the proposition for dissolution made by Moore, nor the articles of dissolution drawn up by Mr; Meigs, at the instance of the parties, but not executed by them, mention the ten per cent. In both, it was stipulated that Moore was to withdraw his capital ($10,000) with interest from the time he advanced it until paid, and he was to wait one, two, and three years for payment. Moore’s receipt for the notes, in which he agrees to receive payment before the day stipulated in the notes; and to deduct ten per cent on such payments, it is insisted, proves, that he was *472 receiving ten per cent for forbearance. Besides, it is insisted, that there were no profits made by the partnership., On the other hand William II. Moore, who has obtained a certificate of discharge in bankruptcy, gives evidence in the cause, and swears positively, that the business had been profitable, and that the only object in adding the ten per cent, to his capital was, because it was an easy mode of adjusting profits, and that it was so added in lieu of profits and not in consideration of the forbearance of payment. He says, it was understood by the parties at the time his proposition was submitted to Mr. Gilliam, that the profits and good will of the establishment, were worth ten per cent, upon the capital advanced, and that sum was to be received by the retiring partner in lieu of profits. The books showed that profits had been made to the amount of thirteen thousand dollars.
In addition to this evidence, the fact that the ten per cent, was received, from the time the capital was put in, in December 1835, up to the time of dissolution in January 1838, proves, that so far, at least, it could not have been added on account of forbearance of payment. For the receipt of W.> II. Moore, before referred to, stipulating for the deduction of ten per cent, discount per annum, should any of the notes be paid by Gilliam before they were due, shows, that if Gilliam had made prompt payment of all the notes, Moore would still have been in the receipt of his capital ($10,000) with ten per cent, per annum from December 1835 to January 1838. So that to this extent, the ten per cent could not have been usurious, because, evidently, it was not added for forbearance of payment.
But the facts connected with the dissolution, and especially, the agreement of Moore, to deduct ten per cent, per annum discount on all payments that might be made before the notes should fall due, strongly indicate that the ten per cent, per *473 annum, from tbe time of tbe dissolution untii the notes were due, was added for forbearance of payment, and we should, without difficulty, so adjudge, if it were not for the opposing evidence of W. H. Moore.
But taking his testimony as unimpeached, we cannot say that it is so inconsistent with the circumstances above referred to, as that we are authorized to disregard it. And as he positively disproves the allegation of usury, we feel constrained to dismiss the bill.
Affirm the decree.